MILDRED DENNY vs. LILLIAN MAY BURBECK, as administratrix and individually.

Hampden.    September 26, 1955. — December 6, 1955.

Present: QUA, C.J., RONAN, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Landlord and Tenant,* Lights, Common porch, Common stairway, Landlord's liability to tenant or one having his rights, Tenancy at will, Time of letting, Contract of letting.

A landlord of a rooming house is not bound to light a common stairway in his control in the absence of a contractual or statutory obligation to do so; but such an obligation may arise as a term of the letting of a room by implication from the circumstances. [312]

The fact that a common porch under the control of the landlord of a rooming house had a light at a time when he orally agreed to rent a room in "a week or two or sometime later" to one who then paid a deposit and subsequently occupied the room did not make maintenance of a light on the porch an implied term of the tenancy beginning at the time of occupancy. [312–313]

The mere fact that the landlord of a rooming house and a tenant at will of a room therein agreed upon an increased rent of $1 per week as a consequence of a friend of the tenant moving into the room with her did not require a finding that thereby a new tenancy began so that the then condition of a common porch in the landlord's control became the standard of maintenance of the porch thereafter imposed upon him. [313]

At the trial of an action against the landlord of a rooming house by a tenant at will of a room therein for personal injuries sustained from falling down the steps of a common porch on a night nearly five months after the tenancy began when the porch was not lighted, testimony by the plaintiff that on one night preceding the beginning of the tenancy the light was on and at other times it was off and on and she did not recall the dates left it conjectural whether or not it was an implied term of the tenancy that the porch should be lighted at night, and did not warrant a finding of liability on the part of the defendant for failing to light it on the night of the accident. [314]

Failure by the landlord of a rooming house to fulfill a promise made to a tenant at will of a room therein after the beginning of the tenancy, to fix a light on a common porch, even if the promise was supported by consideration, gave rise at most to a cause of action against the landlord by the tenant in contract and did not furnish a basis for an action by her in tort for injuries sustained thereafter by falling down the steps of the unlighted porch. [314]

TORT. Writ in the Superior Court dated July 24, 1951. The action was tried before *Hurley,* J.

In this court the case was submitted on briefs.

*Milton M. Fisher & Ralph S. Spooner,* for the plaintiff.

*James P. Moriarty & John F. Sullivan,* for the defendants.

SPALDING, J. The plaintiff had a verdict in this action of tort which was recorded under leave reserved. Thereafter, the judge entered a verdict for the defendants subject to the plaintiff's exception, and the correctness of this action is the only question for decision.

There was evidence of the following: George A. and Lillian M. Burbeck, hereinafter called the defendants, during the period here material were the owners of a "sort of a multiple rooming house" at 117–119 High Street, Springfield.[1] About 6:30 in the evening of December 7, 1950, the plaintiff went to the defendants' premises and talked with them "about getting a room." There was no room ready to rent at that time but the plaintiff was shown a room which she was informed would be available in "a week or two or sometime later." The plaintiff paid a deposit at that time and on December 15, eight days later, "moved in." When the plaintiff talked with the defendants on December 7, there was a light on the porch. When the plaintiff moved in on the fifteenth it was in the daytime but that night "when she went up . . . [a light] was burning." Between February 15 and February 20, 1951, the plaintiff agreed to pay an increase in rent of $1 a week "because a friend, Mrs. Ketchum, moved in with her." "There was no evidence as to [the] lighting conditions either on the date that [the] plaintiff made the arrangement with [the] defendant to have Mrs. Ketchum move in with her or on the date Mrs. Ketchum moved in." During the last month before the accident the light on the porch had been off more or less. The plaintiff spoke to the defendant Lillian M. Burbeck about the porch being dark and stated that some-

---

[1] Originally the action was brought against George A. and Lillian M. Burbeck but on a suggestion of the death of George A. Burbeck Lillian M. Burbeck as his administratrix was made a party defendant.

body would get hurt. Mrs. Burbeck replied that when her husband was able he would take care of it. At the time the plaintiff complained there was no bulb in the light socket.

On the evening of May 10, 1951, the plaintiff went out to do some shopping during the course of which she stopped at a café twice. On the second occasion she remained from 8:45 until 10:45 and had some beer, "possibly four." Around eleven o'clock she returned to her room and because of an argument with her roommate Mrs. Ketchum, who refused to remain in the room with her that night, the plaintiff "left to go out for a walk." As she started down the front steps she put her hand on the railing "to go down on the first step" but she missed it and fell "clear to the pavement." Upon being asked why she missed the step the plaintiff answered, "No light, no bulb, it was dark."

It was agreed that the relationship between the defendants and the plaintiff was that of landlord and tenant.

The place where the plaintiff fell was not part of the premises rented to the plaintiff but was a common passageway under the control of the defendants, or so the jury could have found. In these circumstances the defendants owed the plaintiff the duty to use reasonable care to maintain the parts of the premises within their control in a condition as good as that in which they appeared to be at the time of the letting. *Sordillo* v. *Fradkin,* 282 Mass. 255, 257.

The plaintiff contends that there was a breach of that duty here because of the lack of lighting on the porch on the night of the accident. In the absence of contractual or statutory obligation, it is settled that a landlord is not bound to light a common stairway. *Fenno* v. *Roberts,* 327 Mass. 305, 307, and cases cited. There was no evidence here of an express agreement at the time of the letting touching the matter of lighting. But there may be circumstances where an obligation to light may arise by implication. *Gallagher* v. *Murphy,* 221 Mass. 363, 365. *Donnelly* v. *Larkin,* 327 Mass. 287. We turn, then, to the question whether such an obligation could have been found to arise here.

What occurred on December 7, when the plaintiff talked

with the defendants about renting a room, need not concern us, for nothing happened at that time touching the matter of lighting other than the fact that the porch was then lighted, and that fact affords no basis for imposing an obligation to light upon the defendants. The tenancy did not begin until December 15 when the plaintiff occupied the premises under the oral agreement previously made, and that is the controlling date. *Mathews* v. *Carlton*, 189 Mass. 285. *Flanagan* v. *Welch*, 220 Mass. 186, 189–190. *Sordillo* v. *Fradkin*, 282 Mass. 255. *Milmore* v. *Landau*, 307 Mass. 589, 591.

The defendants concede that the original tenancy began on December 15 but they argue that a new tenancy began between February 15 and February 20, 1951, by reason of the fact that during this period Mrs. Ketchum moved into the plaintiff's room and in consequence thereof the plaintiff and the defendants agreed upon increased rent of $1 a week. Hence, the defendants contend, the time of the letting was during this period and there was no evidence of a light on the porch at that time. We do not accede to this argument. Concerning a similar contention we said, "It would be unreasonable to hold that every trifling alteration in the premises demised or in the relations of the parties necessarily has the effect of an entirely new tenancy upon the standard of maintenance of all the appurtenances in the landlord's control and throws upon the tenant the burden of reëxamining all of them or taking upon himself the consequences of the landlord's then unfulfilled obligations." *Chapman* v. *Standen*, 302 Mass. 4, at page 6. Compare *Griffin* v. *Rudnick*, 298 Mass. 82, 84.

The duty owed to the plaintiff by the defendants was, therefore, fixed as of December 15. The plaintiff testified that she "moved in" in the daytime but in the evening when she went up the steps a light was on. However, on cross-examination she stated that she would leave it that except for December 7 (when she first talked with the defendants) the light was off and on and she did not recall the dates. See *Sullivan* v. *Boston Elevated Railway*, 224 Mass. 405, 406.

As stated above, there could be an obligation on the part of the defendants to light the porch as one of the implied terms of the tenancy, but we are of opinion that the evidence here would not warrant a finding that such an obligation existed. In the cases of *Gallagher* v. *Murphy,* 221 Mass. 363, and *Donnelly* v. *Larkin,* 327 Mass. 287, relied on by the plaintiff, the evidence which was held to warrant a finding that lighting was one of the implied terms of the tenancy was very much stronger. Here the evidence was such as to leave the question in the realm of conjecture.

The promise by Mrs. Burbeck, when the plaintiff complained about there being no light on the porch, to the effect that her husband would fix it when he was able, does not aid the plaintiff. Even if, as does not appear, the promise was founded upon a valuable consideration, its breach by mere omission to act gave rise only to an action of contract and not an action of tort. *Sordillo* v. *Fradkin,* 282 Mass. 255, 257, and cases cited.

*Exceptions overruled.*